IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Venancio Mondragron, | No.  CV-16-2251-PHX-DJH (DKD) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Charles L. Ryan, et al., | |
| Respondents. | |

TO THE HONORABLE DIANE J. HUMETEWA, U.S. DISTRICT JUDGE:

On July 8, 2016, Petitioner Venancio Mondragon ("Petitioner" or "Mondragon") filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1)  Petitioner currently is confined in the Arizona State Prison Complex, Central Arizona Correctional Facility in Florence, Arizona.  (*Id.*)  Petitioner raises two grounds for relief:  (1) that he was sentenced "by the arbitrary and discriminatory application of a patently vague sentencing statute, specifically A.R.S. § 13-603(K) . . . ." in violation of his due process rights under the Fifth and Fourteenth Amendments of the United States Constitution and Article II, Section 24 of the Arizona Constitution; and (2) that his due process rights under the same parts of the United States and Arizona Constitutions alleged in Ground 1 were denied during his sentencing because the sentencing court lacked subject matter jurisdiction when it gave him a sentence that did not conform to Arizona sentencing statutes. (*Id.* at 6-10)

Respondents argue that Petitioner's claims fail because they:  (1) are not cognizable in federal habeas proceedings because they raise issues of state law only; (2) are procedurally defaulted without excuse; and (3) fail on the merits.  (Doc. 12 at 10)

For the reasons set forth below, the Magistrate Judge recommends that this Court deny the Petition for Writ of Habeas Corpus and dismiss this action with prejudice.

## I.     BACKGROUND

### A.     Petitioner's indictment, plea and sentencing

Petitioner was indicted in Maricopa County Superior Court on September 13, 2012, on one count of molestation of a child, and two counts of sexual conduct with a minor.  (Doc. 12-1 at 16-17)[1]  At arraignment, Petitioner entered a plea of not guilty on all charges.  (*Id.* at 20)

On January 29, 2014, Petitioner entered an agreement to plead "no contest" to one count of attempted molestation (Count 1), one count of sexual conduct with a minor (masturbatory) (Count 2), and one count of attempted sexual conduct with a minor (Count 3).  (Doc. 12-1 at 43)  The plea agreement documented that the crimes alleged in Counts 1 and 3 carried a presumptive sentence of 10 years, a minimum sentence of 5 years, and a maximum sentence of 15 years.  (*Id.* at 105)  The agreement further documented that the crime alleged in Count 2 carried a presumptive sentence of 20 years, a minimum sentence of 13 years and a maximum sentence of 27 years.  (*Id.* at 106)  The descriptions for each of the three counts provided that, if Petitioner were sentenced to imprisonment, he "shall also be sentenced to serve a term of community supervision equal to one-seventh of the prison term to be served consecutively to the actual period of imprisonment.  If [Petitioner] fails to abide by the conditions of community supervision, [Petitioner] can be required to serve the remaining term of community supervision in prison."  (*Id.*)  The parties also stipulated, subject to approval of the court:  (1) that Petitioner would be sentenced on Count 2 to a term of 17 to 20 years; (2) on Counts 1 and 3, Petitioner would

---

[1]   Citations to the record are to the page numbers within each document, as assigned within this Court's electronic case filing system.

be placed on lifetime supervised probation upon his discharge from prison on Count 2; and (3) the probation terms would include all sex offender terms. (*Id.*)  Further, the transcript of Petitioner's change of plea hearing indicates Petitioner's counsel advised the court that client wished to plead "no contest" because Petitioner had consumed "excessive alcohol" during the times of the offenses and that he had no recall of the offenses. (*Id.* at 93)  The victim was Petitioner's step-daughter, who was between the ages of 10 and 11. (*Id.* at 102, 105).

Petitioner's sentencing hearing was held on March 4, 2014. (Doc. 12-1 at 113-126)  The court sentenced Petitioner to the presumptive term of 20 years' imprisonment on Count 2, and waived imposition of community supervision on that count because the court had suspended imposition of sentence in Counts 1 and 3 and had placed Petitioner on lifetime supervised probation, commencing on his release under Count 2. (*Id.* at 122)  The court advised Petitioner he had the right to seek post-conviction relief ("PCR") with the aid of an appointed attorney, and that he had up to 90 days to file a notice of PCR. (*Id.* at 124)  The court's minute entry on sentencing specified that the waiver of community supervision for Count 2 was made pursuant to A.R.S. § 13-603(K). (*Id.* at 130)

### B.     Petitioner's Post-Conviction Relief Action

Petitioner timely filed a Notice of PCR on April 21, 2014, and was appointed counsel. (Doc. 12-1 at 153-155, 157)  On December 26, 2014, Petitioner's appointed counsel filed a notice of completion, advised the court she had not identified a colorable claim to support a PCR petition, and requested an extension of time for Petitioner to file a *pro per* PCR petition. (*Id.* at 184-85)  Mondragon filed his PCR petition on February 2, 2015. (Doc. 12-2 at 2-13)  He alleged that:  (1) his sentence improperly subjected him to double jeopardy; (2) the sentencing court lacked subject matter jurisdiction to impose a "facially illegal sentence"; and (3) his sentence violated Arizona statutes. (*Id.* at 3)  Petitioner asserted that he should also have been sentenced to a term of community supervision as required by A.R.S. § 13-603(I), which requirement had been waived

- 3 -

because he was required to serve lifetime probation consecutive to his prison sentence. (*Id.* at 6)  Because of this alleged "fundamental error," Petitioner argued his sentence was illegal and required correction.  (*Id.* at 7, 13)  Petitioner suggested that the only possible way to "cure" this error would be to resentence him under A.R.S. § 13-702, applicable to first time felony offenders, rather than the statute he was sentenced under, section 13-705, which applies to convictions of dangerous crimes against children.  (*Id.* at 13)  The State's response argued that the provision in A.R.S. § 13-603(I), which Petitioner asserted was controlling, was expressly overridden under certain circumstance by subsection 13-603(K), which permitted the court to waive the requirement of community supervision. (*Id.* at 20)

On April 28, 2015, Petitioner's counsel requested additional time for Petitioner to file his reply.  (*Id.* at 29-30)  A few days later, on May 3, 2015, Petitioner's counsel moved to withdraw her notice of completion, stating that she had "recently learned that [Petitioner] was in federal custody [on an immigration matter], and [she had] acquired information that she believe[d] support[ed] a colorable claim for post-conviction relief." (*Id.* at 32)  The court granted this motion on May 6, 2015.  (Doc. 12-1 at 171)  In Petitioner's subsequent petition for PCR filed by his appointed counsel on May 20, 2015, he asserted an entirely different claim for relief.  He argued ineffective assistance of his trial attorney when his attorney failed to notify him of the expiration date of the State's first offered plea agreement, which he claimed had expired without his counsel having first discussed it with him. (Doc. 12-2 at 35-37)

On July 31, 2015, the superior court denied Petitioner's PCR action.  (Doc. 12-2 at 68-72)  The court found that Petitioner had failed to establish prejudice under his ineffective assistance of counsel ("IAC") claim, in part because the presumptive sentence of 20 years' imprisonment in the plea offer that Petitioner accepted was common to both plea agreements, and also because although he may have received a shorter sentence under the original plea offer, he may as easily have received a longer sentence under that same plea offer.  (*Id.* at 71-72)  On August 4, 2015, likely unaware

that the PCR court had issued its ruling, Petitioner filed with the court a *pro per* "notice of extraordinary circumstances," explaining that he had been housed at the county jail for an unrelated matter and had not received a copy of the State's response to his petition for PCR, and asking the court to again mail a copy of the State's response to him.  (*Id.* at 86-87)   He also requested the court to put off ruling on his petition until he could "properly prepare and file a [r]eply to the State's [r]esponse."  (*Id.* at 87)

On August 6, 2015, Petitioner's appointed counsel filed a motion requesting an extension of the deadline for Petitioner to file a *pro per* petition for review of the denial of his PCR petition, explaining that additional time was needed to translate the trial court's decision into Spanish.  (*Id.* at 83)  Mondragon filed a notice of filing a petition for review in the Arizona Court of Appeals on September 11, 2015.  (*Id.*)   In the accompanying memorandum, Petitioner asserted the following three questions for review:  "(1) [d]oes A.R.S. § 13-603(K) violate the due process of law guarantee to Mondragon because [it is] patently unconstitutionally vague[]; (2) [d]oes Mondragon's [sentence] constitute a fundamental error as being an illegally imposed sentence[]; [and] (3) [d]id the trial court abuse its discretion by summarily dismissing Mondragon's Petition for Post-Conviction Relief of Right?"  (*Id.* at 99)  Petitioner disavowed the IAC claim raised by his appointed counsel and reasserted the claims centered on the trial court's alleged misinterpretation of A.R.S. § 13-603(K).  (*Id.* at 104-114)  Additionally, Petitioner alleged the PCR court abused its discretion when it denied his petition, failed to conduct an evidentiary hearing, and failed to pursue the opportunity to correct his "illegal sentence."  (*Id.* a t 114-115)

The Arizona Court of Appeals entered an order dismissing Mondragon's petition for review on September 18, 2015.  (*Id.* at 117)  Noting that the trial court ruled on Mondragon's petition on July 31, 2015, and that he did not file his petition for review until September 16, 2015, the court found his petition untimely under Arizona Rule of Criminal Procedure 32.9(c).  (*Id.*)   The court of appeals further remarked that a trial court may allow a late filing, and noted that petitioner's appointed counsel filed a motion

for an extension of time to file, but concluded that "it does not appea[r] that the trial court ruled on the mo[ti]on." (*Id.*)

Petitioner filed a motion requesting a late filing of his petition for review, which ultimately was filed in the trial court on October 8, 2015. (*Id.* at 120)  The State then filed a response, in which it took no position on Petitioner's request. (*Id.* at 127)  On October 13, 2015, the PCR court denied Petitioner's August 4, 2015 motion requesting additional time to file a reply to the State's response to his PCR petition. (*Id.* at 130-131)  The court found that Petitioner had been represented throughout his PCR action, and that his request for more time to file a *pro per* reply was in essence a request for hybrid representation. (*Id.* at 130)  The court instructed that whether to allow hybrid representation is within the discretion of the court, and found that good cause did not support Petitioner's request. (*Id.* at 131)  However, the court found that good cause supported Petitioner's request for additional time to seek review of the court's ruling on his PCR petition. (*Id.*)  Noting that Petitioner had filed his notice of filing of petition for review on September 11, 2015, the court gave him until that date to file, essentially recognizing his actual filing date as timely. (*Id.* at 132)  On November 6, and again on November 9, 2015, the Arizona Court of Appeals filed in the trial court a duplicate copy of its September 18, 2015 order dismissing Petitioner's appeal of the court's denial of the petition for review.  Each filing was accompanied by a cover letter from the clerk of the Arizona Court of Appeals to the clerk of the Maricopa Superior Court, stating in part, "[c]ertified copy of ORDER dismissing appeal is included herewith in the above entitled and numbered cause." (*Id.* at 136-142)

### C.    Petitioner's special action to Arizona Supreme Court

Although it appears that the Arizona Court of Appeals had not been aware the trial court had granted Petitioner's late petition for review, Petitioner took no further action in the court of appeals and instead filed a petition for special action with the Arizona Supreme Court. (*Id.* at 144-156)  In this special action, Petitioner asserted questions regarding:  (1) the constitutionality of A.R.S. § 13-603(K); (2) whether a challenge to a

sentence as noncompliant with sentencing statutes can be raised at any time because it implicates the sentencing court's subject matter jurisdiction; and (3) whether the trial court's dismissal of his PCR petition and its failure to rule on his motion for extension of time to file a petition for review were error.  (*Id.*)  The Arizona Supreme Court summarily declined to accept jurisdiction of the petition for special action on April 13, 2016. (*Id.* at 175)

## II.    DISCUSSION

As noted, the Petitioner raises two grounds for relief:  (1) that he was sentenced "by the arbitrary and discriminatory application of a patently vague sentencing statute, specifically A.R.S. § 13-603(K) . . ." in violation of his due process rights under the United States and Arizona Constitutions; and (2) that his due process rights under the United States and Arizona Constitutions were denied at sentencing because the sentencing court lacked subject matter jurisdiction when it gave him a sentence that did not conform to Arizona sentencing statutes. (Doc. 1 at 6-10)

### A.    A.R.S. § 13-603(I) and (K)

Both of Petitioner's grounds for relief center on the trial court's application of A.R.S. § 13-603, which provides for sentencing on criminal offenses and sets forth authorized sentences for various offenses.  On Counts 1 and 3, the trial court suspended imposition of a sentence of imprisonment and placed him on lifetime probation commencing on his release from prison.  (Doc. 12-1 at 122)  On Count 2, the court sentenced Petitioner to the presumptive term of 20 years, and waived the requirement for community supervision because Petitioner was subject to lifetime supervised probation on Counts 1 and 3.  (*Id.*)  In its minute entry on Petitioner's sentencing, the court specified that the waiver of community supervision was pursuant to subsection 13-603(K).  (*Id.* at 130)

Petitioner contends that the trial court misinterpreted section 13-603 when it waived the requirement for community service in Count 2 pursuant to subsection 13-

- 7 -

603(K), because such a waiver is not permitted pursuant to subsection 13-603(I).  (Doc. 1 at 6-10)

Subsection 603(I) provides:

> If a person is convicted of a felony offense and the court sentences the person to a term of imprisonment, the court at the time of sentencing shall impose on the convicted person a term of community supervision.  The term of community supervision shall be served consecutively to the actual period of imprisonment if the person signs and agrees to abide by conditions of supervision established by the state department of corrections. Except pursuant to subsection J, the term of community supervision imposed by the court shall be for a period equal to one day for every seven days of the sentence or sentences imposed.

A.R.S.  §  13-603(I).    However,  expressly  allowing  exception  to  the  requirements  of subsection 603(I), subsection 603(K) provides:

> *Notwithstanding subsection I*, if the court sentences a person to serve a consecutive term of probation immediately after the person serves a term of imprisonment, the court may waive community supervision and order that the person begin serving the term of probation upon the person's release from confinement.   The court may retroactively waive the term of community supervision or that part remaining to be served if the community supervision was imposed before July 21, 1997.[2]  If the court waives community supervision, the term of probation imposed shall be equal to or greater than the term of community supervision that would have been imposed.   If the court does not waive community supervision, the person shall begin serving the term of probation after the person serves the term of community supervision.  The state department of corrections shall provide reasonable notice to the probation department of the scheduled release of the inmate from confinement by the department.

A.R.S. § 13-603(K) (emphasis supplied).

**B.      Petitioner's claims regarding A.R.S. §§ 13-603(I) and (K)**

In Ground 1, Petitioner contends that the trial court's application of the first sentence of subsection 13-603(K) to waive the requirement for community supervision on

---

[2]  Subsection 13-603(K) was first added on July 21, 1997.  *See* A.R.S. § 13-603, Historical and Statutory Notes.

Count 2 was an "arbitrary and discriminatory application of a patently vague sentencing statute." (Doc. 1 at 6)  As is noted above, the first sentence of subsection 13-603(K) provides an exception to the requirement in subsection 13-603(I) for a term of community supervision following a term of imprisonment, where the person has been sentenced to serve a consecutive term of probation immediately following the term of imprisonment. Petitioner claims that interpreting the first sentence of subsection 13-603(K) as the trial court in his case did (to waive a term of community supervision after imprisonment, but before a term of probation), "fails to take into consideration the remaining four sentences of the subsection, conflicts with the legislative intent behind § 13-603, and negates the spirit and purpose of the statue and the evil the statue is intended to combat." (*Id.* at 7) Because subsection 13-603(K) permits discretion in a court ("the court *may* waive community supervision"), Petitioner appears to conclude that application of such discretion is *per se* arbitrary and discriminatory, and therefore violates the state and federal constitutional due process rights of the person being sentenced. (*Id.*)

Petitioner's Ground 2 argument is that he was denied constitutional due process when the trial court waived community supervision on Count 2, and that because the waiver was allegedly contrary to Arizona's sentencing statutes, the court abused its discretion and forfeited subject matter jurisdiction. (Doc. 1 at 10)  Petitioner urges this Court to disregard the Arizona legislature's language in subsection 603(K) that expressly permits a specific exception to the general requirement for a term of community supervision under subsection 13-603(I).  Although Petitioner concedes that subsection 603(K) permits waiver of the requirement for community supervision, he nevertheless asserts that:  the trial court "misinterpret[ed] the law" by allowing such a waiver and contends that the trial court's application of subsection 603(K) in his case failed to consider "the other subsections of § 13-603 and relevant statutes of §§ 13-104[3] and 13-105(5)[4], with 13-101[5], and Arizona Supreme Court rulings." (Doc. 1 at 10)

---

[3] Section 13-104 addresses the applicable rule of construction and provides, "[t]he general rule that a penal statute is to be strictly construed does not apply to this title, but the provisions herein must be construed according to the fair meaning of their terms to

Petitioner applies the following analysis to conclude that waiver of a term of community supervision under subsection 13-603(K) is improper.  He first notes that the definition of "community supervision" provided in subsection 13-105(5) specifically refers to subsection 13-603(I), yet makes no mention of any exception to that provision. (*Id.* at 7-8, 9)   Next, Petitioner explains that, in interpreting a statute, a court should endeavor to fulfill the intent of the legislature, and that the plain language of the statute is the best indicator of its meaning.  (*Id.* at 8)   Further, Petitioner points to the rule of construction of section 13-104, indicating that the provisions of a criminal statute are to be construed "according to the fair meaning of their terms to promote justice and effect the objects of the law, including the purposes" set forth in section 13-101.  (*Id.*)  Petitioner then identifies one of the purposes underlying Title 13, that is, to "give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction."  (*Id.*, quoting A.R.S. § 13-101(2))  Petitioner concludes that the principles identified in section 13-101 are embodied by the "clear and unambiguous language of subsection (I)."  Finally, Petitioner concludes that, because subsection 13-603(K) permits waiver of the requirement for community supervision, section 13-603 as a whole cannot be read harmoniously.  (*Id.* at 9)   Additionally, Petitioner reasons that because subsection 13-603(K) provides that a court "may" waive community supervision, and subsection 13-603(I) states that a court "shall" impose a term of community supervision, the latter requirement must prevail under the canons of statutory construction, thereby negating the exception provided in subsection 603(K).  (*Id.* at 9)

promote justice and effect the objects of the law, including the purposes stated in § 13-101."

[4] Section 13-105(5) defines the term "community supervision" as "that portion of a felony sentence that is imposed by the court pursuant to § 13-603, subsection I and that is served in the community after completing a period of imprisonment or served in prison in accordance with § 41-1604.07."

[5] Section 13-101 sets forth the "public policy of this state and the general purposes of [Title 13]."

**C.      Whether Petitioner's claims are cognizable under § 2254**

Throughout his state PCR action, when he was acting *pro per*, Petitioner characterized his claims as including violations of his federal constitutional rights.  In his February 2015 *pro per* PCR petition, Mondragon stated:

> Mondragon herein gives Notice to this PCR Court, Court of Appeals and Supreme Court, State of Arizona, that all issues raised herein are being asserted as a federal claim in a possible future habeas corpus proceeding as may become necessary . . . .  Mondragon asserts this instant petition, and any associated appeal procedures, comport with the above requirements of exhaustion.

(Doc. 12-2 at 4)    Mondragon further reasoned that his sentence violated federal constitutional protections against double jeopardy and equal protection under the law (*Id.* at 5), because he should have been sentenced to a term of community supervision under A.R.S. 13-603(I), and if he had, this would have violated his Constitutional prohibitions against multiple punishments for a single offense.  (*Id.* at 9, 12)

To be eligible for federal habeas corpus relief, a state prisoner must establish that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  State court error interpreting or applying its own state's sentencing laws, without more, is not a cognizable ground for relief in a federal habeas corpus proceeding.  *See, e.g.*, *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (noting, in regard to a claim that the state court misapplied its own sentencing law, that "federal habeas corpus relief does not lie for errors of state law"); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993) (rejecting sentencing claim as "exclusively concerned with state law and therefore not cognizable in a federal habeas corpus proceeding."   Moreover, Petitioner cannot convert this state law sentencing claim into a federal habeas claim by casting it as a due process or constitutional violation.  *See, e.g.*, *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1997) (stating that a petitioner "may not ... transform a state-law issue into a federal one merely by asserting a violation of due process"); *see also Little v. Crawford*, 449 F.3d 1075, 1083 n.6 (9th Cir. 2006) (citing *Langford*).  Rather, to state a cognizable

federal habeas claim based on an asserted state sentencing error, a petitioner must show that such an alleged state sentencing error was "so arbitrary or capricious as to constitute an independent due process" violation. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992). "Absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing laws does not justify federal habeas relief." *Christian v. Rhode,* 41 F.3d 461, 469 (9th Cir.1994). *See also Moore v. Chrones*, 687 F.Supp.2d 1005, 1041 (C.D. Cal. 2010) (claim of state sentencing error not cognizable unless error was so arbitrary and capricious as to rise to level of due process violation (citing *Richmond*, 506 U.S. at 50)). Where a sentence was within the limits authorized by state law, and the state sentencing court committed no error in the exercise of its discretion in sentencing the petitioner, a federal habeas court must defer to the state court's interpretation and application of its own state sentencing law. *See Moore*, 687 F.Supp.2d at 1041 (citing, *inter alia*, *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (state court's interpretation of state law binds federal habeas court)).

In Ground 2, Petitioner claims that his sentencing court lacked jurisdiction to sentence him as it did because the ability of a court to waive community supervision under subsection 13-603(K) was contrary to legislative intent and other statutory requirements. (Doc. 1 at 10)  This claim fails because "[j]urisdiction is no exception to the general rule that federal courts will not engage in collateral review of state court decisions based on state law." *Poe v. Caspari*, 39 F.3d 204, 207 (8th Cir. 1994) (concluding that whether Missouri courts had jurisdiction to sentence petitioner was a state law issue and was not properly before the court on § 2254 review); *see Reel v. Ryan*, 2013 WL 2284988, at *5 (D. Ariz. May 22, 2013) (concluding that the habeas court could not review "the state law issue of whether the state court had jurisdiction.").

For this Court to decide Petitioner's claims would require it to decide whether his trial court erred in applying A.R.S. § 13-603(K) to waive the requirement for community supervision, or whether the state court had jurisdiction to impose his sentence.  Petitioner challenges the Arizona court's interpretation and applicability of state sentencing statutes.

Despite Petitioner's characterization of his claim as a federal constitutional claim, the claim challenges a state law determination on an issue of state law and is not cognizable on federal habeas review.  Here, the state court sentenced Petitioner under the terms of A.R.S. § 13-603(K), which was facially permissible as an express exception to the community supervision requirement within subsection 13-603(I).  Petitioner has failed to show that the state sentencing error he alleges was an error, let alone an error amounting to fundamental unfairness, or an error that was arbitrary or capricious to the degree that would support a claim of an independent due process violation.

**III.   CONCLUSION**

For the reasons set forth above, the undersigned Magistrate Judge concludes that § 2254 habeas review is not available for Petitioner's claims.   The Magistrate Judge therefore recommends the Petition be denied.

Accordingly,

**IT IS THEREFORE RECOMMENDED** that Venancio Mondragron's Petition for Writ of Habeas Corpus be **denied** and **dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that Petitioner's request for an evidentiary hearing (Doc. 13 at 1) be **denied**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure.  Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation

may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna–Tapia,* 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 25th day of April, 2018.

David K. Duncan
United States Magistrate Judge